UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

LISA M. LAWSON,                          )
                                         )
            Plaintiff,                   )
                                         )
                                         )
v.                                       )        No. 3:13-CV-197
                                         )        (COLLIER/GUYTON)
                                         )
CAROLYN W. COLVIN,                       )
Acting Commissioner of Social Security,  )
                                         )
            Defendant.                   )

## REPORT AND RECOMMENDATION

This case is before the undersigned pursuant to 28 U.S.C. § 636(b), Rule 72(b) of the

Federal Rules of Civil Procedure, and the Rules of this Court for a report and recommendation

regarding disposition by the District Court of the Plaintiff's Motion for Summary Judgment and

Memorandum in Support [Docs. 11, 12] and the Defendant's Motion for Summary Judgment and

Memorandum in Support [Docs. 13, 14]. Plaintiff Lisa M. Lawson seeks judicial review of the

decision of the Administrative Law Judge ("the ALJ"), the final decision of the Defendant

Carolyn W. Colvin, Acting Commissioner of Social Security ("the Commissioner").

The Plaintiff filed a Title II application for a period of disability and disability insurance

benefits and a Title XVI application for supplemental security income on March 2, 2010,

alleging disability since September, 1, 2008, due to seizures. Her application was denied initially

and upon reconsideration. The Plaintiff then requested a hearing, which was held before ALJ

James Dixon, in Knoxville, Tennessee, on January 10, 2012. The Plaintiff was present and

testified. During the hearing, the Plaintiff amended her onset date to October 21, 2010. The ALJ

1

issued an unfavorable decision on September 8, 2011. The ALJ found that the Plaintiff was not eligible for Title II benefits because her amended alleged onset date was after September 30, 2008, the date she was last insured for Title II benefits, and, therefore, her application was dismissed. In regards to the Plaintiff's Title XVI application, the ALJ denied the application on the bases that the Plaintiff was found capable of performing sedentary work. The Appeals Council denied the Plaintiff's request for review of that decision; thus, the decision of the ALJ became the final decision of the Commissioner. The Plaintiff now seeks judicial review of the Commissioner's decision.

## I.     ALJ FINDINGS

The ALJ made the following findings:

1.   The claimant meets the insured status requirements of the Social Security Act through September 30, 2008.

2.   The claimant amended her onset date to October 21, 2010, after the date of last insured, September 30, 2008. Therefore, her application for Title II benefits is dismissed.

3.   The claimant has not engaged in substantial gainful activity since October 21, 2010, the alleged onset date (20 CFR 416.971 *et seq.*).

4.   The claimant has the following severe impairment: Seizure Disorder (20 CFR 416.971 *et seq.*).

5.   The claimant does not have an impairment or combination of impairments that meets or medical equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.925 and 416.926).

6.   After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except stand/walk two out of eight hours; sit six out of

eight hours; no postural, manipulative, visual, or communicative limitations; avoid concentrated exposure to fumes, odors, dust, gases, poor ventilation, etc.; and avoid all exposure to hazards such as machinery, heights, etc.

7. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

8. The claimant was born on October 2, 1967 and was 43 years old, which is defined as a younger individual age 18-44, on the alleged disability onset date (20 CFR 416.963).

9. The claimant has at least a high school education and is able to communicate in English (20 CFR Part 416.964).

10. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

11. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.969, and 416.969(a)).

12. The claimant has not been under a disability, as defined in the Social Security Act, from October 21, 2010, through the date of this decision (20 CFR 416.920(g)).

[Tr. 14-19].


## II.  DISABILITY ELIGIBILITY

To qualify for SSI benefits, the plaintiff must file an application and be an "eligible individual" as defined in the Act.  42 U.S.C. § 1382(a); 20 C.F.R. § 416.202.  An individual is eligible for SSI benefits on the basis of financial need and either age, blindness, or disability. See 42 U.S.C. § 1382(a).

"Disability" is the inability "[t]o engage in any substantial gainful activity by reason of

3

any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. 42 U.S.C. § 1382c(a)(3)(B).

Disability is evaluated pursuant to a five-step analysis summarized as follows:

> 1. If claimant is doing substantial gainful activity, he is not disabled.
>
> 2. If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.
>
> 3. If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.
>
> 4. If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.
>
> 5. Even if claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity and vocational factors (age, education, skills, etc.), he is not disabled.

Walters v. Comm'r of Soc. Sec., 127 F.3d 525, 529 (6th Cir. 1997) (citing 20 C.F.R. § 404.1520). Plaintiff bears the burden of proof at the first four steps. Walters, 127 F.3d at 529. The burden shifts to the Commissioner at step five. Id. At the fifth step, the Commissioner must

4

prove that there is work available in the national economy that the claimant could perform.  Her v. Comm'r of Soc. Sec., 203 F.3d 388, 391 (6th Cir. 1999) (citing Bowen v. Yuckert, 482 U.S. 137, 146 (1987)).

### III.   STANDARD OF REVIEW

When reviewing the Commissioner's determination of whether an individual is disabled pursuant to 42 U.S.C. § 405(g), the Court is limited to determining "whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence."  Blakley v. Comm'r of Soc. Sec., 581 F.3d 399, 405 (6th Cir. 2009) (citing Key v. Callahan, 109 F.3d 270, 273 (6th Cir. 1997)).  If the ALJ applied the correct legal standards and his findings are supported by substantial evidence in the record, his decision is conclusive and must be affirmed.  Warner v. Comm'r of Soc. Sec., 375 F.3d 387, 390 (6th Cir. 2004); 42 U.S.C. § 405(g).

In addition to reviewing the ALJ's findings to determine whether they were supported by substantial evidence, the Court also reviews the ALJ's decision to determine whether it was reached through application of the correct legal standards and in accordance with the procedure mandated by the regulations and rulings promulgated by the Commissioner.  See Wilson v. Comm'r of Soc. Sec., 378 F.3d 541, 544 (6th Cir. 2004).  The Court may, however, decline to reverse and remand the Commissioner's determination if it finds that the ALJ's procedural errors were harmless.  See Wilson, 378 F.3d at 546-47

On review, Plaintiff bears the burden of proving his entitlement to benefits.  Boyes v. Sec'y. of Health & Human Servs., 46 F.3d 510, 512 (6th Cir. 1994) (citing Halsey v. Richardson, 441 F.2d 1230 (6th Cir. 1971)).

## V.    POSITIONS OF THE PARTIES

The Plaintiff contends that the ALJ erred in three respects.  First, the Plaintiff argues that the ALJ committed reversible error by failing to mention Listing 11.02 or conduct any analysis under the listing at step three of the sequential evaluation.  [Doc. 12 at 8].  Second, the Plaintiff asserts that the ALJ did not properly weigh her credibility.  [Id. at 12].  Lastly, the Plaintiff maintains that the ALJ did not properly consider the testimony of her husband.  [Id. at 14].

The Commissioner argues that the ALJ's step three analysis was appropriate because the Plaintiff did not meet or equal the criteria of Listing 11.02.  [Doc. 14 at 4].  In addition, the Commissioner contends that the ALJ properly assessed the Plaintiff's credibility as well as the testimony of the Plaintiff's husband.  [Id. at 7].

The Plaintiff filed a reply asserting that the Commissioner's step three argument constitutes *post-hoc* rationalization for the ALJ's failure to discuss Listing 11.02.  [Doc. 15 at 1-2].

## VI.    ANALYSIS

The Court will address the Plaintiff's allegations of error in turn.

## A.    Medical Listing 11.02

The Plaintiff argues that the ALJ committed reversible error by failing to find that the Plaintiff's seizure disorder did not meet or equal Listing 11.02 (epilepsy).  [Doc. 12 at 8]. Specifically, the Plaintiff asserts that the ALJ failed to follow the sequential evaluation because he simply found that the Plaintiff did not meet or equal an impairment listing without mentioning a specific listing and essentially failed to provide any meaningful discussion.  [Id. at

6

10-11].

As stated above, at step three of the sequential evaluation, the plaintiff has the burden of establishing that her impairment meets or equals a listed impairment. Walters, 127 F.3d at 529. In other words, the plaintiff must show that: (1) she meets *all* of the criteria in the listing; or (2) her "impairment is the medical equivalent of a listing, which means it is 'at least equal in severity and duration to the criteria of any listed impairment.'" Reynolds v. Comm'r of Soc. Sec., 424 F. App'x 411, 414 (6th Cir. 2011) (quoting 20 C.F.R. §§ 404.1526(a) and 416.926(a)) (additional citations omitted).

In the present matter, the ALJ found that the Plaintiff's seizure disorder constituted a severe impairment at step two. [Tr. 14]. The ALJ went on to discuss the impairment at step three, by opining the following: "The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." [Tr. 15]. The only explanation the ALJ gave for his finding at step three was that "the claimant does not have the gravity of symptoms nor medical documentation in order to establish an impairment of listing level severity." [Id.]. The ALJ did not mention the consideration of any particular listing. [Id.].

The Plaintiff cites to Reynolds v. Comm'r of Soc. Sec., 424 F. App'x 411, 414 (6th Cir. 2011) in support of her argument that the ALJ's failure to mention Listing 11.02 and conduct any analysis under the listing constitutes reversible error. [Docs. 12 at 9-11, 15 at 2]. In Reynolds, the Sixth Circuit found that the ALJ had erred by failing to analyze the plaintiff's physical condition in relation to a listed impairment. 424 F. App'x at 416. In that case, the ALJ had initially concluded during his step three analysis that the plaintiff did not have an impairment or combination of impairments that met Listings 1.00 or 12.00. Id. at 415. While the ALJ went on

7

to provide a thorough discussion of listing 12.00 (mental impairment) by comparing the listing's criteria to the medical evidence and testimony of record, the ALJ proceeded to the next step—determining the residual functional capacity—without any mention of whether the plaintiff's physical impairment met or equaled Listing 1.00.  Id.  As a result, the court found that the ALJ had completely skipped an entire step of the sequential evaluation and that such error was not harmless.  Id. at 416.  The court explained, "in this case, correction of such an error is not merely a formalistic matter of procedure, for it is possible that the evidence [the plaintiff] put forth could meet [Listing 1.00]."  Id.

In the present matter, the Court finds that the ALJ erred when he failed to provide any sort of discussion that would suggest that he considered a specific impairment listing when concluding that the Plaintiff did not have an impairment that met or equaled a listing under the regulations.  See Roberts v. Commission of Soc. Sec., No. 12–14661, 2013 WL 6062018, at *11 (E.D. Mich. 2013) (finding that the ALJ erred by failing "to identify a single physical impairment Listing that he purportedly considered at this step").  Specifically, the Court finds the ALJ's step three analysis lacking in that it fails to demonstrate that the ALJ even considered a relevant impairment listing.  The ALJ should have provided a more adequate explanation as to why he did not find that the Plaintiff met or equaled the relevant listing–Listing 11.02–before proceeding to the next step of the sequential evaluation.

The Court may, however, decline to reverse and remand the Commissioner's determination if it finds that the ALJ's procedural error were harmless.  An ALJ's violation of the Social Security Administration's procedural rules is harmless and will not result in reversible error "absent a showing that the claimant has been prejudiced on the merits or deprived of substantial rights because of the [ALJ]'s procedural lapses."  Wilson, 378 F.3d at 546-47.  Thus,

8

an ALJ's procedural error is harmless if his ultimate decision was supported by substantial evidence and the error did not deprive the claimant of an important benefit or safeguard. See id. at 547.

The Commissioner argues that the Plaintiff did not produce any evidence showing that she met or equaled all the requirements of Listing 11.02. [Doc. 14 at 4-5]. The Commissioner further maintains that although the ALJ's discussion of why the Plaintiff did not meet or equal a listing was brief, the decision "directed Plaintiff to substantial evidence to support the finding." [Doc. 14 at 6]. The Court assumes that the Commissioner is referring to the subsequent section of the disability determination in which the ALJ discussed the Plaintiff's medical records, testimony, and the testimony of Plaintiff's husband in assessing the Plaintiff's residual functional capacity. [Tr. 16-18]. While the Plaintiff argues that the Commissioner's argument in this regard provides nothing more than post-hoc rationalization, the Court is not persuaded.

Our sister court's opinion in Staggs v. Astrue, No. 2:09-CV-00097, 2011 WL 3444014, at *1 (M.D. Tenn. Aug. 8, 2011) is instructive to the issue at hand. In Staggs, the court observed that the Sixth Circuit has "rejected a heightened articulation standard" when it comes to an ALJ's step three analysis. Id. at *3 (citing Bledsoe v. Barnhart, 165 F. App'x 408, 411 (6th Cir. 2006)). The court further stated, "[n]or is the procedure so legalistic that the requisite explanation and support must be located entirely within the section of the ALJ's decision devoted specifically to step three; the court in Bledsoe implicitly endorsed the practice of searching the ALJ's entire decision for statements supporting the step three analysis." Id. Similar to the present case, at step three of the ALJ's decision in Staggs, the ALJ's analysis consisted of a single statement: "The claimant does not have the gravity of symptoms nor medical documentation in order to establish an impairment of listing level severity." Id. While the court recognized that other

9

cases had been remanded for similar cursory conclusions,[1] the court refused to remand the case before it on the grounds that the evidence of record was insufficient to establish that the plaintiff met or equaled a listed impairment.  Id. at *4.  The court explained that in the cases where a remand resulted, the remand was ordered because "there were conflicts of evidence such that a more thorough step-three analysis could have yielded a finding that the claimant's condition met or equaled a listed impairment and, consequently, that the claimant was disabled."  Id. at *3.  Because no such evidence existed in Staggs, the court declined to remand.  Id.

Thus, in the present matter, the Court must determine whether a remand would result in no more than the correction of a procedural error as found in Staggs, or whether the evidence of record suggest the possibility that the Plaintiff's impairment could meet or equal Listing 11.02 under a more thorough step three analysis as found in Reynolds.

Listing 11.02 is described as follows:

> 11.02 Epilepsy--convulsive epilepsy, (grand mal or psychomotor), documented by detailed description of a typical seizure pattern, including all associated phenomena; occurring more frequently than once a month in spite of at least 3 months of prescribed treatment.
> A. Daytime episodes (loss of consciousness and convulsive seizures) or
> B. Nocturnal episodes manifesting residuals which interfere significantly with activity during the day.

20 C.F.R. § 404, Subpart P, App. 1 (11.00).  The severity of a claimant's impairment is "determined according to type, frequency, duration, and sequelae of seizures."  Id. § 11.00(A).

---

[1] See Mogg v. Barnhart, 199 F. App'x 573, 576 (7th Cir. 2006) (holding that "[a]lthough the ALJ was not required to mention every piece of evidence in the record, his failure here to evaluate properly evidence that potentially supported Mogg's claim does not provide much assurance that he adequately examined whether Mogg's ailments met or equaled a Social Security listing at Step Three of his analysis") (internal citations omitted); Williams v. Barnhart, 407 F. Supp. 862, 865 (E.D. Mich. 2005) (finding that "[w]here, as here, there is substantial evidence in the record that could support findings either way as to whether a claimant meets a Listing Requirement, 'the determination is for the ALJ to make in the first instance'") (quotation omitted).

A detailed description of at least one seizure is required with the description including "the presence or absence of aura, tongue bites, sphincter control, injuries associated with the attack, and postictal phenomena." Id. In addition, where professional observation of a seizure is not available, testimony from other people beside the plaintiff "is essential for description of type and frequency of seizures." Id.

Furthermore, the listing's criteria may only be met where the plaintiff's impairment persists despite following prescribed antiepileptic treatment. Id. In this regard, "[a]dherence to prescribed antiepileptic therapy can ordinarily be determined from objective clinical findings in the report of the physician currently providing treatment for epilepsy. . . . Blood drug levels should be evaluated in conjunction with all the other evidence to determine the extent of compliance." Id. The listing further provides that "[w]here documentation shows that use of alcohol or drugs affects adherence to prescribed therapy or may play a part in the precipitation of seizures, this must also be considered in the overall assessment of impairment level." Id.

In the disability determination, the ALJ found that based upon treatment notes from the Plaintiff's primary care physicians, emergency room physicians, and neurologist Sam Kabbani, M.D., the Plaintiff's "[m]edical records indicate a longitudinal history of seizure disorder." [Tr. 16]. In particular, the ALJ noted that the results of an electroencephalogram ("EEG") in December 2006 suggested a non-diagnostic seizure disorder. [Tr. 16]. As a result, the Plaintiff received a Vargus Nerve Stimulator ("VNS") implant in March 2007 to help control her seizures. [Tr. 16]. The ALJ found that "although the claimant continues to experience seizures, medical records indicate that the claimant has not been entirely compliant with medications or doctors' recommendations." [Tr. 16]. Along with medication noncompliance, the ALJ stated that treatment notes indicated that the use of alcohol and alcohol withdrawal further attributes to the

11

Plaintiff's seizure activity.  [Tr. 16-17].

The Court finds that the discussion provided by the ALJ in the remaining portion of the disability determination provides substantial evidence that the Plaintiff's seizure disorder does not meet or equal the criteria of Listing 11.02.  Thus, the ALJ's step three analysis constitutes harmless error because there is no conflicting evidence that would suggest a more thorough step three analysis could result in a different outcome than that reached by the ALJ.

In particular, substantial evidence supports the ALJ's finding that the Plaintiff was not compliant with her medication.  During the Plaintiff's treatment with Dr. Kabbari between November 2006 and April 2009, treatment notes repeatedly indicated that the Plaintiff failed to take her medication as prescribed.   [Tr. 193, 194, 196, 199].  On July 22, 2008, Dr. Kabbari noted that the Plaintiff was using her medication once a day, rather than two times a day as prescribed, she had self-discontinued her Keppra, and admitted to potential triggers increasing her seizure activity.  [Tr. 196].  After the Plaintiff reported a significant seizure in January 2009, Dr. Kabbari noted that the Plaintiff was not taking her medication as recommended and strongly encouraged the Plaintiff not to self-adjust.  [Id.].  The same treatment notes reveal that when the Plaintiff used Carbatrol as directed, she felt better.  [Id.].  Treatment notes from the Plaintiff's following visit in April noted that the Plaintiff "**HAS REPEATEDLY BEEN ASKED TO USE MEDICATIONS AS PRESCIBED, BUT CONTINUES TO DO THEM AD LIB OR P.R.N. AT HER DISCRETION**."  [Tr. 193] (emphasis in the original).

In addition, while the Plaintiff reported to her primary care provider, Cherokee Health Systems ("CHS"), that she was compliant with her medication in June 2010, pharmacy records indicated that the Plaintiff had not refilled her medication for Carbamazepine in two months.  [Tr. 323].  Plaintiff's noncompliance was noted as the possible reason why she had been

experiencing seizures. [Id.]. The Plaintiff cites to laboratory reports indicating the Plaintiff's antiepileptic medication was within therapeutic levels thereafter. [Doc. 12 at 12 (citing Tr. 328, 341-42; 347; 351)]. However, May 2011 treatment notes from CHS indicate that the Plaintiff was noncompliant again. [Tr. 345].

Moreover, CHS has documented the role alcohol has on the Plaintiff's seizure. On June 6, 2010, treatment notes revealed a concern that the Plaintiff had a substance abuse problem. [Tr. 322]. The Plaintiff was examined the following month in which it was noted that the context of the Plaintiff's seizure included, in part, alcohol withdrawal. [Tr. 324]. Alcohol has been consistently noted as aggravating the Plaintiff's symptoms. [Tr. 324, 345, 348, 352]. While the Plaintiff reported in February 2011 that she had been sober for four months [Tr. 356], her husband testified before the ALJ that the Plaintiff has four to five alcoholic drinks per week. [Tr. 49].

Finally, state agency physician Kanika Chaudhuri, M.D., whom the ALJ assigned some weight to [Tr. 18 ], opined that the Plaintiff's statement regarding the frequency and severity of her seizures was only partially credible given the Plaintiff's history of noncompliance. [Tr. 314]. Dr. Chaudhuri noted that the medical evidence indicated that when the Plaintiff takes her medications as prescribed, her seizures are well controlled. [Tr. 316]. The Court finds support in Dr. Chaundhuri's opinion as various treatment notes indicate that when the Plaintiff is medication compliant she experiences good results. [Tr. 195, 303, 306, 345, 348]. Furthermore, the Court notes that ALJ's observation that Plaintiff's treating sources, Dr. Kabbani or CHS, at no time indicated any restrictions or limitations as a result of the Plaintiff's seizures. [Tr. 17].

Based upon the foregoing, the Court finds no conflicts among the evidence of record that would indicate that had the ALJ provided a more adequate analysis at step three of the sequential

13

evaluation a different result could have been achieved. Therefore, the Court finds that remanding the case to the ALJ in order to specifically address Listing 11.02 would simply be a "formalistic matter of procedure." See <u>Reynolds</u>, 424 F. App'x at 416.

Accordingly, the Plaintiff's allegation of error in this regard is not well-taken.

**B.      Plaintiff's Credibility**

Next, the Plaintiff argues that the ALJ erred in evaluating her credibility. [Doc. 12 at 13]. Specifically, the Plaintiff argues that the ALJ's decision regarding the Plaintiff's creditability does not comply with Social Security Ruling 96-7p. [<u>Id.</u> at 13].

"In evaluating complaints of pain, an ALJ may properly consider the credibility of the claimant." <u>Walters</u>, 127 F.3d at 531. The ALJ's findings regarding credibility "are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility." <u>Id.</u> However, the ALJ's finding must be supported by substantial evidence. <u>Id.</u> Our appellate court has articulated the standard for evaluating subjective complaints as follows:

> First, we examine whether there is objective medical evidence in an underlying medical condition. If there is, we then examine (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

<u>Duncan v. Sec. of Health & Human Servs.</u>, 801 F.2d 847, 853 (6th Cir. 1986).

In deciding whether the objective evidence confirms the severity of the alleged pain or whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain, the ALJ must consider the following factors:

14

(i) daily activities; (ii) the location, frequency, and intensity of the pain or other symptoms; (iii) precipitating and aggravating factors; (iv) the type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms; (v) treatment, other than medication, received or have received for relief of pain or other symptoms; (vi) any measures that are used or were used to relieve pain or other symptoms; (vii) other factors concerning functional limitations and restrictions due to pain or other symptoms. Soc. Sec. Rul. 96-7p, 1996 WL 374186, at *3 (1996); 20 C.F.R. § 1529(c)(3). Although the ALJ is not required to address every factor, the ALJ's "decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." Soc. Sec. Rul. 96-7p, 1996 WL 374186, at *3.

The Plaintiff cites the following portion of the ALJ's credibility finding:

> The undersigned has considered the claimant's testimony and reports of her financial situation. She testified at the hearing that she lives with her husband, and they live solely from his disability income. While the undersigned cannot definitively ascertain the claimant's subjective motivation for obtaining benefits, overall, the record clearly demonstrates a need for additional household income while the record as a whole fails to demonstrate a legitimate need based upon disability.

[Tr. 17]. The Plaintiff characterizes the above as a "conclusory statement [that] directly contradicts the requirements in Social Security Ruling 96-7p." [Doc. 12 at 13]. While the Court agrees with the Plaintiff's contention that she has not provided any testimony indicating her motivations to apply for disability benefits [see id.], the Plaintiff ignores the fact that the ALJ made other findings, it addition to the aforementioned, in assessing the Plaintiff's credibility.

15

The ALJ noted that the Plaintiff's statements regarding her impairment were not credible because they were inconsistent with the medical evidence of record. [Tr. 16]. The ALJ also noted that the Plaintiff had only received conservative treatment which indicated that her pain was not as severe as she alleged. [Id.]. Finally, the ALJ remarked that the Plaintiff's medication noncompliance, which continued after her alleged onset date, suggested that her symptoms were not as serious as she alleged. [Tr. 17].

The Court finds the ALJ provided good reason for finding the Plaintiff's credibility less than persuasive. The fact that the ALJ's statements concerning the Plaintiff's credibility were not strung together in a single section, but were noted at different portions of the ALJ's opinion, has no bearing on the Court's conclusion. In addition, the Court finds that the ALJ's credibility determination is supported by substantial evidence. In particular, the Court has already found that the medical evidence of record fails to demonstrate that the Plaintiff meets or equals a listed impairment. In addition, the only opinion evidence of record was by Dr. Chaundhuri who opined that the Plaintiff's alleged symptoms were only partially credible given her history of failing to adhere to prescribed treatment. In sum, the Court finds no reason to disturb the ALJ's finding in this regard. See Walters, 127 F.3d at 531 (noting that "discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among the medical reports, claimant's testimony, and other evidence").

Accordingly, the Court finds that the ALJ properly addressed and weighed the Plaintiff's credibility.


C.      Testimony of Plaintiff's Husband

Finally, the Plaintiff maintains that the ALJ did not properly consider the testimony of

16

her husband Jeff Lawson. [Doc. 12 at 14]. Specifically, the Plaintiff argues that the ALJ did not weigh Mr. Lawson's testimony in accordance with Social Security Ruling 06-3p. The Plaintiff contends that because Mr. Lawson's testimony was consistent with other medical evidence and demonstrated that the Plaintiff's impairment met the criteria of Listing 11.02, his testimony was inappropriately rejected under the ruling. [Id. at 15].

Social Security Ruling 06-3p provides guidance for how an adjudicator should weigh evidence provided from "other sources," including spouses, who are not considered "acceptable medical sources" under the regulations. Soc. Sec. Rul. 06-3p, 2006 WL 2329939 at *2 (2006). The ruling recognizes that while "'other sources' cannot establish the existence of a medically determinable impairment," they may help shed light on the severity of the claimant's impairment and how the impairment affects the claimant's ability to function. Id. The factors enumerated in 20 C.F.R. §§ 404.1527(c)(2) and 416.927(c), which are used for evaluating the medical opinions of "acceptable medical sources," remain guiding principles for determining the weight that should be given to the evidence provided from "other sources." Id. at *4. These factors include:

- How long the source has known and how frequently the source has seen the individual;
- How consistent the opinion is with other evidence;
- The degree to which the source presents relevant evidence to support an opinion;
- How well the source explains the opinion;
- Whether the source has a specialty or area of expertise related to the individual's impairment(s); and
- Any other factors that tend to support or refute the opinion.

Id. at *4-5. The weight assigned to evidence provided from "other sources" will vary depending on the particular facts of each case. Id. at *4.

The ruling further provides that because the regulations instruct that all relevant evidence should be considered, the ALJ's opinion "should reflect the consideration of opinions from

17

medical sources who are not 'acceptable medical sources.'" Id. at 6.  In this regard, the ALJ "generally should explain the weight given to opinions from these 'other sources,' or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case." Id.

In the present matter, Mr. Lawson testified that he has kept a diary of the Plaintiff's seizures.  [Tr. 47].  He stated that the Plaintiff has anywhere from one to four seizures a month, and explained what occurs when the Plaintiff experiences a grand mal seizure and a black out seizure.  [Tr. 47-48].  He further explained that when the Plaintiff experiences a grand mal seizure, it can take her thirty minutes to a day to recover.  [Tr. 48].  In addition, Mr. Lawson stated that while the Plaintiff had been noncompliant with her medication up until the previous year, she had been compliant since then and still experienced as many seizures as she did before.  [Tr. 49].  He also testified that the Plaintiff drinks alcohol around one drink per day and about four to five drinks per week.  [Id.].

In his decision, the ALJ explained the weight assigned to Mr. Lawson's testimony as follows:

> Also, as appropriate under SSR 06-3p, the undersigned has considered the testimony of the claimant's husband, Mr. Lawson. Mr. Lawson's testimony does not establish that the claimant is disabled.  Since Mr. Lawson is not medically trained to make exacting observations as to dates, frequencies, types, and degrees of medical signs and symptoms, or of the frequency or intensity of unusual moods or mannerisms, the accuracy of the testimony is questionable.  Moreover, by virtue of the relationship as the husband of the claimant, the witness cannot be considered a disinterested third party whose testimony would not tend to be colored by affection for the claimant and the natural tendency to agree with the symptoms and limitations the claimant alleges. More importantly, significant weight cannot be given to the

18

> witness's testimony as it, like the claimant's, is simply not
> consistent with the preponderance of the opinions and observations
> by medical doctors in this case.

[Tr. 17].

Contrary to the Plaintiff's assertion, the Court finds that the ALJ gave good reason for rejecting Mr. Lawson's opinion. In Hyson v. Comm'r of Soc. Sec., No. 5:12CV1831, 2013 WL 2456378, at *20 (N.D. Ohio June 5, 2013), the court found that the ALJ's explanation that the plaintiff's spouse "was not medically trained to make exacting observations as to frequencies, types, and degrees of medical signs and symptoms" and "was not a disinterested third party witness as she had a financial interest in Plaintiff receiving disability income" were good reasons for declining to give full weight to the testimony of the claimant's spouse. The court further found that because the spouse's testimony was inconsistent with the claimant's testimony regarding his limitations, substantial evidence supported the ALJ's determination. Id.

Neither is the Court persuaded here that the ALJ acted improperly when he considered Mr. Lawson's expertise, relationship to the Plaintiff and his possible interest in the outcome of the disability determination. Although the Plaintiff argues these considerations were improper under Social Security Ruling 06-3p [Doc. 12 at 14-15], the ruling specifically states that an adjudicator may consider the source's knowledge or expertise in the area related to a claimant's impairment as well as any other factor that may support or refute the opinion. Soc. Sec. Rul. 06-3p, 2006 WL 2329939 at *4-5. Moreover, the fact that the ALJ found Mr. Lawson's testimony inconsistent with the medical evidence of record also provides good reason under the ruling for assigning less than full weight to Mr. Lawson's testimony.

The Court further finds that substantial evidence supports the ALJ's decision. "[L]ay testimony must be given 'perceptible weight' [only] where it is supported by medical evidence."

19

<u>Allison v. Comm'r of Soc. Sec.</u>, No. 96-3261, 1997 WL 103369, at *3 (6th Cir. 1997) (citing <u>Lashley v. Sec. of Health & Human Servs.</u>, 708 F.2d 1048, 1054 (6th Cir. 1983)).  As more fully discussed above, the medical evidence of record demonstrates that the Plaintiff is not entirely compliant with her medication, which treatment notes indicate creates a negative effect upon the severity and quantity of seizures the Plaintiff experiences.  The fact that the Plaintiff fails to take her medication as directed contradicts Mr. Lawson's testimony that the Plaintiff has been compliant.  In addition, the Plaintiff's use of alcohol has been noted to trigger episodes of seizures.  Mr. Lawson testified that the Plaintiff drinks four to five alcoholic drinks per week.  Thus, regardless of whether the seizure diaries kept by Mr. Lawson accurately reflect the frequency and description of the Plaintiff's seizures, the fact that the Plaintiff's compliance with her medication is questionable at best and her consumption of alcohol plays a triggering role with her seizures, the Court finds that substantial evidence supports the ALJ's conclusion that Mr. Lawson's testimony does not demonstrate that the Plaintiff is disabled.

Accordingly, the Plaintiff's argument is not well-taken.

## VII.    CONCLUSION

Based upon the foregoing, it is hereby **RECOMMENDED**[2] that Plaintiff's Motion for Summary Judgment [**Doc. 11**] be **DENIED** and that the Commissioner's Motion for Summary Judgment [**Doc. 13**] be **GRANTED**.

Respectfully submitted,


_____s/ H. Bruce Guyton_____
United States Magistrate Judge

---

[2] Any objections to this Report and Recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Fed. R. Civ. P. 72(b)(2). Such objections must conform to the requirements of Rule 72(b), Federal Rules of Civil Procedure. Failure to file objections within the time specified waives the right to appeal the District Court's order. Thomas v. Arn, 474 U.S. 140, 106 S. Ct. 466 (1985). The district court need not provide de novo review where objections to this report and recommendation are frivolous, conclusive or general. Mira v. Marshall, 806 F.2d 636 (6th Cir. 1986). Only specific objections are reserved for appellate review. Smith v. Detroit Federation of Teachers, 829 F.2d 1370 (6th Cir. 1987).